UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

LUIS VICENTE,                   :
        Plaintiff,              :
                                :
        v.                      :   Case No. 3:17cv516(AWT)
                                :
DEP'T OF CORRECTIONS, ET AL.,   :
        Defendants.             :

**<u>INITIAL REVIEW ORDER</u>**

The plaintiff, Luis Vicente, is incarcerated at the

Northern Correctional Institution in Somers, Connecticut

("Northern").  He has filed this civil action pursuant to 42

U.S.C. § 1983 and Title II of the Americans with Disabilities

Act ("ADA"), 42 U.S.C. § 12101, et seq. against the Department

of Corrections, Commissioner Scott Semple, Deputy Commissioner

Monica Rinaldi, Wardens Feliciano, Allison Black, Santiago, Anne

Cournoyer and Scott Erfe, Director of Clinical Services Craig

Burns, Director of the ADA Colleen Gallagher, Health Services

Administrator Brian Liebel and Drs. Mark Frayne, Gerard Gagne

and Joslyn Cruz.

Pursuant to 28 U.S.C. § 1915A(b), the court must review

prisoner civil complaints against governmental actors and

"dismiss ... any portion of [a] complaint [that] is frivolous,

malicious, or fails to state a claim upon which relief may be

granted," or that "seeks monetary relief from a defendant who is immune from such relief." Id.   Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).   A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard.   Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)).   Although courts still have an obligation to interpret "a pro se complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility.   See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

The plaintiff alleges that he has been diagnosed with several mental health disorders and has taken medication to treat his disorders since childhood.  See id. ¶¶ 22-23.  At times, the plaintiff has attempted suicide, abused drugs and become paranoid.  See id. ¶ 24.

The complaint consists of allegations regarding conduct and incidents that occurred at six different correctional facilities from August 2015 to October 2016.  The plaintiff was confined at New Haven Correctional Center from August 31, 2015 to September 21, 2015.  See id. ¶¶ 28-31.  On the first night of his confinement at New Haven Correctional Center, mental health officials placed the plaintiff on suicide watch because he was experiencing suicidal thoughts due to the fact that he had learned that his mother was dying.  See id. ¶ 30.  He also experienced paranoid thoughts.  See id.  The plaintiff states that he is illiterate and that prison officials at New Haven Correctional Center denied him a reasonable accommodation for his learning disability.  See id. ¶ 31(a).

The plaintiff was confined at Bridgeport Correctional Center from September 22, 2015 to November 2, 2015.  See id. ¶¶ 31(b), 35.  He claims that on one occasion during his confinement at Bridgeport Correctional Center, he attacked

another inmate because he thought the inmate was after him.  See id. ¶ 31(b).  No one in the mental health department treated him in connection with this incident.  See id.  On October 8, 2015, the plaintiff's cellmate assaulted him.  See id. ¶ 32.  The plaintiff claims that a correctional officer broke his jaw during the assault.  See id.  The plaintiff remained in the medical department for five days without being provided with treatment for his broken jaw.  See id. ¶ 34.

The plaintiff was confined at Corrigan Correctional Institution ("Corrigan") from November 3, 2015 to December 16, 2015.  See id. ¶¶ 35-36.  During his confinement at Corrigan, prison officials issued him numerous disciplinary reports.  See id. ¶ 36.  One of the reports charged the plaintiff with being a gang member.  See id.  As a result of this disciplinary report, prison officials transferred the plaintiff to MacDougall-Walker Correctional Institution ("MacDougall-Walker").  See id.

The plaintiff was confined at MacDougall-Walker from December 16, 2015 to January 21, 2016.  See id. ¶¶ 36-37.  During his confinement at MacDougall-Walker, mental health officials prescribed medications to treat the plaintiff's mental health conditions.  See id. ¶ 36.  The plaintiff received more disciplinary reports during his confinement at MacDougall-

4

Walker.  See id. ¶ 37.  Prior to his transfer to Northern

Correctional Institution, the plaintiff learned that he had been

found not guilty of the disciplinary charge of being a member of

a gang.  See id.

The plaintiff was confined at Northern from January 22,

2016 to June 15, 2016.  See id. ¶¶ 37-41.  Northern does not

have a separate mental health unit.  During his confinement at

Northern, Drs. Frayne and Gagne discontinued the medications

that had been previously prescribed to treat the plaintiff's

mental health conditions because they did not think that the

plaintiff was mentally ill.  See id. ¶¶ 38, 70.  Drs. Frayne and

Gagne and Health Services Administrator Liebel failed to develop

an adequate mental health treatment plan for the plaintiff and

did not provide him with psychotherapy.  See id. ¶¶ 68-69.

The plaintiff was confined at MacDougall- Walker from June

16, 2016 to August 4, 2016.  See id. ¶¶ 41-42.  During his

confinement at MacDougall-Walker, mental health officials re-

prescribed medications to treat the plaintiff's mental health

conditions.  See id. ¶ 41.

The plaintiff was confined at Cheshire Correctional

Institution ("Cheshire") from August 5, 2016 until at least

October 19, 2016.  See id. ¶¶ 42-43.  On October 19, 2016,

during a basketball game, the plaintiff thought that another inmate was going to assault him.  See id. ¶ 43.  The plaintiff alleges that he became scared and "blacked out on the [inmate] which led to outside charges."  See id.

Cheshire does not have a separate mental health department or unit.  See id. ¶ 53.  During his confinement at Cheshire Dr. Cruz failed to develop an adequate mental health treatment plan for the plaintiff, did not provide him with psychotherapy and failed to transfer him to Garner Correctional Institution ("Garner") for mental health treatment.  See id. ¶¶ 68-69, 71.

The plaintiff generally contends that he remained in administrative segregation at Northern and Cheshire for a total of about nine months.  See id. ¶ 59.  During the time that the plaintiff was confined in administrative segregation, he spent twenty-three hours a day in his cell, he ate all of his meals in his cell, he left his cell to go to recreation for one hour a day, he showered three times a week, he did not engage in contact visits, he was not eligible for work assignments, he did not participate in congregate programming, he retained only a few items of personal property in his cell, and he lacked unlimited use of the toilet and the sink in his cell. See id. ¶ 58.

The plaintiff seeks monetary damages from the defendants in their individual capacities and injunctive and declaratory relief from the defendants in their official capacities.  The plaintiff asserts claims under both 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.  The court addresses the section 1983 claims first.

## I.   Department of Corrections

Neither the State of Connecticut, nor the Department of Correction is a person subject to suit under 42 U.S.C. § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, (1989)(state and state agencies not persons within meaning of 42 U.S.C. § 1983); Torrence v. Pelkey, 164 F. Supp. 2d 264, 271 (D. Conn. 2001) (dismissing claims against Connecticut Department of Correction because it "is not a 'person' within the meaning of § 1983") (citations omitted).  Accordingly, all section 1983 claims against the State of Connecticut Department of Correction are dismissed.  See 28 U.S.C. § 1915A(b)(1).

## II.  Eighth Amendment Claims

The plaintiff alleges that the defendants were deliberately indifferent to his mental health needs and subjected him to unconstitutional conditions of confinement in violation of the

7

Eighth and Fourteenth Amendments.  At the time of the incidents
set forth in the complaint, however, the plaintiff was a
pretrial detainee.

The Second Circuit has recently confirmed that a pretrial
detainee's claim of deliberate indifference to conditions of
confinement, including health and safety, is "governed by the
Due Process Clause of the Fourteenth Amendment, rather than the
Cruel and Unusual Punishments Clause of the Eighth Amendment . .
. because "[p]retrial detainees have not been convicted of a
crime and thus may not be punished in any manner—neither cruelly
and unusually nor otherwise."  Darnell v. Pineiro, 849 F.3d 17,
29 (2d Cir. 2017) (internal quotation marks and citations
omitted).  Thus, to the extent that the plaintiff asserts that
the remaining defendants violated his Eighth Amendment rights,
those claims are being dismissed.  See 28 U.S.C. § 1915A(b)(1).

### III. Fifth Amendment Claims

In the third count of the complaint, the plaintiff contends
that all the defendants violated his rights to due process of
law under the Fifth and Fourteenth Amendments.  See Compl., ¶¶
89, 91.  The Fifth Amendment applies to the federal government,
not to the states.  See Dusenbery v. United States, 534 U.S.
161, 167 (2002) (holding Fifth Amendment's Due Process Clause

8

protects citizens against only federal government actors, not
State officials); <u>Darnell</u>, 849 F.3d at 21 n.3 (noting Due
Process Clause of the Fourteenth Amendment applicable to claims
of "state pretrial detainees who are seeking to vindicate their
constitutional rights" and Due Process Clause of Fifth Amendment
"applicable to claims brought by federal detainees").  Because
the plaintiff is not a federal detainee and has not alleged any
deprivation of his rights by the federal government or federal
employees, any Fifth Amendment claims against the remaining
defendants are being dismissed.  <u>See</u> 28 U.S.C. § 1915A(b)(1).

## IV.  New Haven Correctional Center

The plaintiff claims that mental health staff at New Haven
Correctional Center placed him on suicide watch when he arrived
at the facility because he was having suicidal as well as
paranoid thoughts.  He also claims that he is illiterate and
prison officials did not accommodate his learning disability.
The court addresses the ADA claim in a separate section of this
ruling.

The plaintiff names the warden at New Haven Correctional
Center as a defendant.  He does not, however, assert any facts
demonstrating that Warden Feliciano violated his constitutional
rights during his confinement at New Haven Correctional Center.

The court concludes that the facts as alleged in the complaint fail to state a plausible claim of a violation of his federally or constitutionally protected rights by Warden Feliciano.  The claims against Warden Feliciano are being dismissed.  See 28 U.S.C. § 1915A(b)(1).

**V.   Bridgeport Correctional Center**

The plaintiff describes two assaults that occurred at Bridgeport Correctional Center during his confinement there from September 22, 2015 to November 2, 2015.  The claim is asserted against Warden Allison Black.

A district court enjoys substantial discretion to manage its docket efficiently to avoid duplicate litigation.  See Taylor v. Rodriguez, 238 F.3d 188, 197 (2d Cir. 2001) (acknowledging that a district court may dismiss a second suit as duplicative of an earlier suit).  A plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."  Curtis v. Citibank, N.A., 226 F.3d 133, 139 (2d Cir. 2000).  The Second Circuit has concluded that "[t]he complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider

the equities of the situation when exercising its discretion."
Id. (citations omitted).

Generally, the first suit to be filed "should have priority
absent the showing of balance of convenience . . . or . . .
special circumstances" in favor of the second action. Adam v.
Jacobs, 950 F.2d 89, 92 (2d Cir. 1991) (internal quotation marks
and citation omitted).  If it is possible for a plaintiff to
amend the complaint in each action to contain all of the issues
and parties presently contained in either action, the
continuation of the first action to be filed is favored. See
Hammett v. Warner Brothers Pictures, Inc., 176 F.2d 145, 150 (2d
Cir. 1949); Gyadu v. Hartford Ins. Co., No. 3:96cv1755 (D. Conn.
Apr. 21, 1997) (Squatrito, J.) (dismissing case under "prior
pending action doctrine" where plaintiff could raise all causes
of action by amended complaint in his first action), aff'd, 133
F.3d 907 (2d Cir. 1998).

To determine whether a claim is barred by the prior pending
action doctrine, the court may rely on a comparison of the
pleadings filed in the two actions. See Connecticut Fund for
the Environment v. Contract Plating Co., 631 F. Supp. 1291, 1293
(D. Conn. 1986).  The plaintiff has asserted the same claims in
connection with his confinement at Bridgeport Correctional

11

Center in September and October 2015 in another complaint filed
in this court.  See Vicente v. Dep't of Corrections, et al.,
Case No. 17cv1200(AWT).  The same defendant named in this
action, Warden Allison Black is also named in the complaint
filed in Vicente v. Dep't of Corrections, et al., Case No.
17cv1200(AWT).  The issues of deliberate indifference to safety
and delay in treatment for a serious medical need are being
litigated in that case.  See id. (Compl., ECF No. 1).

Although this case was filed before Vicente v. Dep't of
Corrections, et al., Case No. 17cv1200(AWT), the prior pending
action doctrine permits the dismissal of the first-filed case or
claims in the first-filed case where 'the balance of
convenience' weighs in favor of the second-filed action."  See
Adam, 950 F.2d at 93-94 (internal quotation marks and citation
omitted).  In the second-filed case, the plaintiff has
elaborated on his claims and included additional defendants who
were involved in the deliberate indifference to safety and
medical needs claims.  Although the second-filed action does not
include the plaintiff's allegations about his assault on another
inmate, the plaintiff is not precluded from amending the
complaint filed in the second-filed action to include this
claim.  Thus, the court concludes that it would be appropriate

to have all claims regarding incidents that occurred during the plaintiff's confinement at Bridgeport Correctional Center from September 22, 2015 to November 2, 2015 resolved in the second-filed action.  Accordingly, all claims against the defendants that are related to the plaintiff's confinement at Bridgeport Correctional Center from September 2015 to November 2015 are being dismissed pursuant to the prior pending action doctrine. See 28 U.S.C. § 1915A(b)(1).

## VI.  Corrigan Correctional Institution

The plaintiff states that at some point after his transfer to Corrigan on November 3, 2015, he spoke to mental health staff and wrote to Warden Santiago about his mental health diagnosis. He claims that the warden did not respond to his letter.  The plaintiff also received multiple disciplinary reports while he was confined at Corrigan.  Warden Santiago, Commissioner Semple and Deputy Commissioner Rinaldi transferred him to MacDougall-Walker after he received a disciplinary report for being a gang member.  As of December 16, 2015, the plaintiff was confined at Walker.

The only staff member at Corrigan who is named as a defendant is Warden Santiago.  The plaintiff's allegation that at some point that he wrote to Warden Santiago, who is not a

mental health provider, about his mental health condition, but did not receive a response to the letter does not state a claim that Warden Santiago was deliberately indifferent to his mental health needs.  The plaintiff does not indicate the nature of any requests for treatment that may have been included in the letter.  Rather, he simply states that he wrote to Warden Santiago about his diagnosis.  Furthermore, at the same time that he wrote to the warden, the plaintiff verbally contacted the mental health department regarding his mental health conditions.  The plaintiff does not allege that mental health staff at Corrigan failed to respond to his requests for treatment.  The claims against Warden Santiago are being dismissed for failure to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915A(b)(1).

## VII. MacDougall-Walker Correctional Institution

The plaintiff claims that at some point between November 3, and December 15, 2015, Warden Santiago, Commissioner Semple and Deputy Commissioner Rinaldi transferred him from Corrigan to MacDougall-Walker.  On December 16, 2015, mental health staff at MacDougall-Walker prescribed medications to treat his mental health conditions.  On January 22, 2016, after prison officials at Walker found that he was not guilty of being a gang member,

14

Warden Santiago, Commissioner Semple and Deputy Commissioner Rinaldi transferred him to Northern.

On June 16, 2016, Warden Cournoyer, Deputy Warden Mulligan and Drs. Frayne and Gagne transferred the plaintiff from Northern back to MacDougall-Walker.  During his confinement at MacDougall-Walker mental health staff prescribed medications to treat his mental health conditions.  Commissioner Semple and Deputy Commissioner Rinaldi transferred the plaintiff from MacDougall-Walker to Cheshire on August 5, 2016.

None of the named defendants are or were employed at MacDougall-Walker.  In addition, the facts as alleged do not state a claim of a violation of the plaintiff's constitutionally or federally protected rights.  The United States Supreme Court has held that an inmate has no right to be housed at the prison of his or her choice.  See Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); Meachum v. Fano, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules").  Thus, any claims regarding transfers of the plaintiff to and

from MacDougall-Walker do not state a claim of a violation of a
constitutional right.  Furthermore, there are no allegations
that the mental health staff members denied the plaintiff
treatment for his mental health conditions.  Any claims related
to the plaintiff's confinement at MacDougall-Walker in 2015 or
2016 are being dismissed.  See 28 U.S.C. § 1915A(b)(1).

**VIII.     Northern and Cheshire**

The plaintiff asserts claims against Commissioner Semple,
Deputy Commissioner Rinaldi, Wardens Cournoyer and Erfe,
Director of Clinical Services Burns, Director of the ADA
Gallagher, Health Services Administrator Liebel and Drs. Frayne,
Gagne and Cruz regarding his mental health care and the
conditions of confinement at Northern and Cheshire.  As
indicated above, during his confinement at both facilities, the
plaintiff was a pretrial detainee.

In Darnell v. Pineiro, 849 F.3d 17 (2d Cir. 2017), the
Second Circuit applied the standard set forth in Kingsley v.
Hendrickson, ___ U.S. ___, 135 S. Ct. 2466 (2015) to a pretrial
detainee's Fourteenth Amendment claims of deliberate
indifference to health and safety or unconstitutional conditions
of confinement.  See id. at 29-30 ("A pretrial detainee may
establish a § 1983 claim for allegedly unconstitutional

16

conditions of confinement by showing that the officers acted
with deliberate indifference to the challenged conditions.")
There are two prongs to the standard governing a conditions of
confinement claim under the Fourteenth Amendment.  To meet the
first prong, a detainee must allege that "the conditions, either
alone or in combination, pose[d] an unreasonable risk of serious
damage to his [mental and/or physical] health."  Id. at 30.
(internal quotation marks and citations omitted).

     To meet the second prong, a detainee must allege "that the
defendant-official acted intentionally to impose the alleged
condition, or recklessly failed to act with reasonable care to
mitigate the risk that the condition posed to [him or her] even
though the defendant-official knew, or should have known, that
the condition posed an excessive risk to health or safety."  Id.
at 35. A detainee must demonstrate that a prison official's
conduct was intentional or reckless, not merely negligent.  Id.
at 36.  Thus, the second or subject prong, also called "the mens
rea prong, of [the] deliberate indifference [standard] is
defined objectively."  Id. at 35.

     Although the Second Circuit has not specifically
applied Kingsley to claims of deliberate indifference to medical
or mental health needs claims asserted by pretrial detainees,

17

the court has implied that Kingsley should be applied to all
deliberate indifference claims of pretrial detainees.
See Darnell, 849 F.3d at 3 ("A pretrial detainee may not be
punished at all under the Fourteenth Amendment, whether through
the use of excessive force, by deliberate indifference to the
conditions of confinement, or otherwise."); see also Lloyd v.
City of New York, 246 F.Supp.3d 704, 718 (S.D.N.Y. 2017)
(applying an objective analysis to the "mens rea prong" of the
Fourteenth Amendment deliberate indifference to serious medical
needs standard).  Thus, the court applies the standard set forth
in Darnell to the plaintiff's Fourteenth Amendment deliberate
indifference to mental health needs claim.

     To state a claim for deliberate indifference to a serious
medical or mental health need, the plaintiff must meet a two-
pronged test.  Under the first prong, the plaintiff must
demonstrate that his or her medical or mental health need was
"sufficiently serious."  Salahuddin v. Goord, 467 F.3d 263, 279
(2d Cir. 2006)(internal quotation marks and citation omitted).
Factors relevant to the seriousness of a medical condition
include whether "a reasonable doctor or patient would find [it]
important and worthy of comment," whether the condition
"significantly affects an individual's daily activities," and

whether it causes "chronic and substantial pain."  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quotation marks omitted).

Under the second prong, or mens rea prong, the defendants' conduct is assessed objectively.  See Darnell, 849 F.3d at 35. The defendants must "know, or should have known, that the condition posed an excessive risk to health or safety."  Id. Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983.  See Kingsley, 135 S.Ct. at 2472 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.")

### A.   Northern – Mental Health Care

The plaintiff alleges that Dr. Burns, Commissioner Semple and Deputy Commissioner Rinaldi transferred him from MacDougall-Walker to the administrative segregation unit at Northern on January 22, 2016.  The plaintiff remained at Northern until June 15, 2016.

There is no separate mental health unit at Northern. During his confinement there, Drs. Frayne and Gagne took the plaintiff off of his medications and denied him any other treatment for his mental health conditions.  Drs. Frayne and

19

Gagne and Health Services Administrator Liebel failed to develop an adequate mental health treatment plan for the plaintiff and did not provide him with psychotherapy.  The plaintiff claims that defendants Frayne, Gagne and Liebel were deliberately indifferent to his mental health needs.

The court concludes that the plaintiff's allegations are sufficient, at this stage of litigation, to demonstrate a serious mental health need.  See Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000) ("Courts have repeatedly held that treatment of a psychiatric or psychological condition may present a serious medical need.")(internal quotation marks and citation omitted).  In the context of mental health needs, propensities to attempt suicide, harm oneself, and/or exhibit severe depression or anxiety attacks have been viewed as "sufficiently serious."  See Barnes v. Ross, 926 F.Supp.2d 499, 506 (W.D.N.Y. 2013) ("propensity to attempt suicide or harm oneself is undoubtedly a serious medical condition"); Zimmerman v. Burge, No. 06 Civ. 0176 (GLS) (GHL), 2009 WL 3111429, at *8 (N.D.N.Y. Sept. 24, 2009) (collecting cases from other circuits) (inmate, diagnosed with depression by prison officials, who harbored potentially suicidal thoughts "suffered from a sufficiently serious medical need); Guarneri v. Hazzard, No. 06

20

Civ. 0985 (NAM) (DRH), 2008 WL 552872, at *6 (N.D.N.Y. Feb. 27,
2008) (inmate suffering from PTSD, bipolar disorder, and
depression sufficiently alleged "a serious medical need as a
result of his mental illnesses").

With respect to the second prong, the plaintiff has alleged
that Drs. Gagne and Frayne discontinued his mental health
medications during his confinement at Northern.  In addition,
Drs. Frayne and Gagne and Health Services Administrator Liebel
failed to develop an adequate mental health treatment plan for
the plaintiff and did not provide him with psychotherapy.
The court concludes that the plaintiff has alleged sufficient
facts to show that the defendants should have known that he
required treatment for his mental health conditions and that
failure to provide such treatment posed an excessive risk to his
mental health.  Thus, the Fourteenth Amendment claim of
deliberate indifference to mental health needs will proceed as
to defendants Drs. Frayne and Gagne and Health Services
Administrator Liebel.

**B.   Cheshire – Mental Health Care**

The plaintiff alleges that Commissioner Semple and Deputy
Commissioner Rinaldi transferred him from Walker to the
administrative segregation unit at Cheshire on August 5, 2016.

The plaintiff remained at Cheshire until at least October 19, 2016.

There is no separate mental health unit at Cheshire.  Dr. Cruz treated the plaintiff during his confinement at Cheshire. The plaintiff alleges that Dr. Cruz failed to develop an adequate treatment plan for him or provide him with psychotherapy.  In addition, she did not transfer the plaintiff to Garner to be treated for his mental health conditions.

The court concludes that the plaintiff has alleged sufficient facts to show that defendant Dr. Cruz should have known that he required treatment for his serious mental health conditions and that failure to provide such treatment posed an excessive risk to his mental health.  Thus, the Fourteenth Amendment claim of deliberate indifference to mental health needs with regard to the plaintiff's confinement at Cheshire will proceed as to defendant Dr. Cruz.

### C.   Northern and Cheshire – Conditions of Confinement

The plaintiff states that he had been confined at Northern during phase one of the administrative segregation program and confined at Cheshire during phase two of the administrative program.  He includes a description of the conditions of confinement in administrative segregation and complains that the

conditions were too restrictive and that the conditions exacerbated his mental health conditions and behavior.

He has alleged facts suggesting that defendants Semple, Rinaldi and Burns were aware of the restrictive conditions in the administrative segregation program at both Northern and Cheshire and of his mental health needs, but still had him transferred to both facilities.  In addition, Wardens Cournoyer and Erfe, Drs. Frayne, Gagne and Cruz, Health Administrator Liebel and ADA Director Gallagher were aware of the plaintiff's mental health conditions and did not transfer him to a more appropriate facility for treatment of his mental health conditions.  These allegations suffice, at the present stage of the litigation, to show that defendants Semple, Rinaldi, Burns, Cournoyer, Erfe, Gagne, Frayne, Cruz, Liebel and Gallagher should have known that the plaintiff's mental health conditions were serious and required treatment and that subjecting him to the restrictive conditions of confinement of the administrative segregation programs at both Cheshire and Northern posed an excessive risk to his mental health.  Thus, the court concludes that the plaintiff has stated plausible claims for deliberate indifference to his mental health conditions and unconstitutional conditions of confinement in violation of the

23

Fourteenth Amendment against defendants Semple, Rinaldi, Burns, Cournoyer, Erfe, Gagne, Frayne, Cruz, Liebel and Gallagher.

## IX.  Failure to Supervise or Train

The plaintiff generally contends that all of the defendants failed to hire and train sufficient mental health staff to provide mental health treatment to inmates at the facilities in which he was confined during 2015 and 2016.  In addition, he contends that all of the defendants created a policy or allowed a policy or custom to continue under which he was deprived of adequate mental health care and failed to adequately supervise their subordinates who were committing the violations set forth in the complaint.

These allegations are conclusory.  The plaintiff sets forth no facts to support these statements.  The plaintiff may not rely on threadbare and conclusory allegations to state a plausible claim of deliberate indifference to his mental health needs.  See Iqbal, 556 U.S. at 678("A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . [or] naked assertion[s] devoid of further factual enhancement" does not state a plausible claim for relief); Mustafa v. Povero, No. 15-CV-6714 CJS, 2017 WL 4169339, at *5 (W.D.N.Y. Sept. 20, 2017)

24

(dismissing claims against officer because complaint "makes only conclusory, boiler-plate allegations concerning Povero's creation of a policy and his alleged failure to supervise or train his subordinates."); Erdogan v. Nassau County, No. 10-5837, 2014 WL 1236679, *16 (E.D.N.Y. March 25, 2014) (dismissing claims that "defendant supervisors were reckless in their failure to supervise [the correctional officer], and knew or should have known that [the correctional officer] was sexually abusing female inmates and that the conduct against Plaintiff was likely to occur; and . . . [that] the failure of the supervisory defendants to train, supervise, and discipline [the correctional officer] amounted to gross negligence" because allegations were "conclusory and . . .not supported by sufficient factual averments as required under Iqbal") (citations omitted); Cicio v. Graham, No. 9:08-CV-534, 2009 WL 537534, at *7 (N.D.N.Y. Mar.3, 2009) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.")(citation omitted).  Thus, the claims that defendants created a custom or policy that deprived the plaintiff of mental health treatment and/or failed to hire,

train or supervise mental health staff at the New Haven

Bridgeport, Corrigan, MacDougall-Walker, Northern and Cheshire

prison facilities in 2015 and 2016 are being dismissed.  See 28

U.S.C. § 1915A(b)(1).

**X.   ADA Claim**

The plaintiff alleges that he is illiterate and is unable

to advocate for himself because of his illiteracy.  Compl. ¶ 61.

He also asserts that he suffers from multiple mental health

disorders.  The plaintiff claims that prison officials at New

Haven Correctional Center did not accommodate his learning

disability and generally asserts that prison officials denied

him "A.D.A. assistance/help."  Id. ¶ 31.  Although the plaintiff

has named the Department of Correction's Director of the ADA as

a defendant, he includes no specific claims against defendant

Gallagher with regard to his ADA claim.  In the third count of

the complaint, the plaintiff generally contends that the

defendants failed to "adhere to the state and federal laws

concerning the Americans with Disabilities Act."  Id. ¶ 91.  The

plaintiff does not otherwise elaborate on his ADA claim.

To state a claim under the ADA, the plaintiff must plead

"(1) that he is a qualified individual with a disability; (2)

that he was excluded from participation in a public entity's

services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusions or discrimination was due to his disability." Hargrave v. Vermont, 340 F.3d 27, 34-35 (2d Cir. 2003).  Most importantly, the plaintiff must allege that his mistreatment was motivated by either discriminatory animus or ill will due to disability.  See Elbert v. N.Y. State Dep't of Corr. Servs., 751 F. Supp. 2d 590, 594-95 (S.D.N.Y. 2010) (citing Garcia v. S.U.N.Y. Health Sciences Ctr. Of Brooklyn, 280 F.3d 98, 112 (2d Cir. 2001)).

An inmate may not maintain an ADA claim against a state actor in his or her individual capacity.  See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (Title II of the Americans with Disabilities Act does not provide "for individual capacity suits against state officials."); Morales v. New York, 22 F. Supp. 3d 256, 271 (S.D.N.Y. 2014) (there is no individual liability under the Americans with Disabilities Act).  Thus, the ADA claim asserted against defendants Semple, Rinaldi, Burns, Cournoyer, Erfe, Gagne, Frayne, Cruz, Liebel, Gallagher, Feliciano, Black and Santiago in their individual capacities is being dismissed as lacking an arguable legal basis.  See 28 U.S.C. § 1915A(b)(1).

An inmate may, however, bring a Title II ADA claim against a state or its agent in its official capacity for injunctive relief.  See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (holding that Title II ADA suits and Rehabilitation Act suits for prospective injunctive relief may be brought under *Ex parte Young* against state officers in their official capacities).  In addition, under certain circumstances, an inmate may assert a Title II ADA claim for monetary damages against a state or an individual in his or her official capacity.  See United States v. Georgia, 546 U.S. 151, 159 (2006) ("insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity").  Thus, the court considers the plaintiff claims for injunctive relief against the defendants in their official capacities.

The plaintiff has not asserted that the defendants discriminated against him or treated him differently because of his alleged learning disability or mental illness.  See Elbert, 751 F. Supp. 2d at 595 ("Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical [or mental health] treatment, but do not allege that the inmate was treated

differently because of his disability.").  Although the
plaintiff claims that he was unable to draft a written grievance
or written request regarding his concerns about his mental
health treatment, the Department of Correction's Inmate
Administrative Remedies Directive provides that "[a]ppropriate
provision shall be made for those [inmates] who do not read,
speak or understand English or Spanish.  Inmates who are
impaired or disabled shall receive assistance as necessary."
Conn. Dep't of Correction Admin. Directive 9.6(5)(A)(1).  In
addition, each inmate "shall have access to Administrative
Directive 9.6, Inmate Administrative Remedies. . . . [and]
[s]pecial provisions shall be made to ensure access for the
impaired or disabled, illiterate or those with language
barriers."  Id. 9.6(5)(B).  The plaintiff does not allege that
the defendants excluded him from or denied him the benefits of
any services, programs, including the administrative remedy
program, or activities because of his disability.  See Nails v.
Laplante, 596 F. Supp. 2d 475, 481–82 (D. Conn. 2009)(dismissing
inmate's ADA claim, which focused on inadequate medical care,
because the complaint "d[id] not include any non-conclusory
allegations of discriminatory animus or ill will based on his
disability and identifie[d] no program he could not participate

in or any service that was denied as a result of his disability").

The court notes that in the complaint filed in <u>Vicente v. Dep't of Corrections, et al.</u>, Case No. 17cv1200(AWT), the plaintiff asserts that he was able to exhaust all of his available remedies under State of Connecticut Department of Correction Administrative Directive 9.6.  <u>See</u> Compl., ECF No. 1 at 2 ¶ 3.  Thus, the plaintiff's claim that he is unable to utilize the Department of Correction's administrative grievance process is lacking in merit.

The court concludes that the plaintiff has failed to state a claim against the defendants under the ADA.  The ADA claim is being dismissed as to all defendants in their official capacities.  <u>See</u> 28 U.S.C. § 1915A(b)(1).

**ORDERS**

The court enters the following orders:

(1)  All ADA claims, all section 1983 claims against the State of Connecticut Department of Correction, all section 1983 claims related to the plaintiff's confinement at Walker, the Fifth and Eighth Amendment claims brought under section 1983 against defendants Semple, Rinaldi, Burns, Cournoyer, Erfe, Gagne, Frayne, Cruz, Liebel, Gallagher, Black, Santiago and

Feliciano in their individual and official capacities, the section 1983 failure to supervise and train claims against all defendants, and all other section 1983 claims against Warden Feliciano and Warden Santiago in their individual and official capacities are hereby **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  All other section 1983 claims that are related to plaintiff's confinement at Bridgeport Correctional Center from September 2015 to November 2015 are hereby **DISMISSED** pursuant to the prior pending action doctrine.  See 28 U.S.C. § 1915A(b)(1). Thus, all claims against the State of Connecticut Department of Correction and Wardens Black, Santiago and Feliciano have been dismissed.

The Fourteenth Amendment deliberate indifference to mental health needs claims and the Fourteenth Amendment unconstitutional conditions of confinement claims that are related to the plaintiff's confinement at Cheshire and Northern in 2016 will proceed against defendants Semple, Rinaldi, Burns, Cournoyer, Erfe, Gagne, Frayne, Cruz, Liebel and Gallagher in their individual capacities and their official capacities to the extent that the plaintiff seeks injunctive relief.

(2)  **Within twenty-one (21) days of this order**, the Clerk shall prepare a summons form and send an official capacity

service packet to the U.S. Marshal's Service.  The U.S. Marshals
Service shall serve the summons, a copy of the complaint and
this order on defendants Semple, Rinaldi, Burns, Cournoyer,
Erfe, Gagne, Frayne, Cruz, Liebel and Gallagher in their
official capacities by delivering the necessary documents in
person to the Office of the Attorney General, 55 Elm Street,
Hartford, CT 06141.

(3) **Within twenty-one (21) days of this order**, the Clerk
shall ascertain from the Department of Correction Office of
Legal Affairs the current work addresses for Commissioner Scott
Semple, Deputy Commissioner Monica Rinaldi, Warden Anne
Cournoyer, Warden Scott Erfe, Director of Clinical Services
Craig Burns, Director of the Americans with Disabilities Act
Colleen Gallagher, Health Services Administrator Brian Liebel,
Dr. Mark Frayne, Dr. Gerard Gagne and Dr. Joslyn Cruz and mail a
copy of the complaint, this order and a waiver of service of
process request packet to each defendant in his or her
individual capacity at his or her current work address.  On the
thirty-fifth (35th) day after mailing, the Clerk shall report to
the court on the status of each request.  If any defendant fails
to return the waiver request, the Clerk shall make arrangements
for in-person service by the U.S. Marshals Service and the

32

defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)   Defendants Semple, Rinaldi, Burns, Cournoyer, Erfe, Gagne, Frayne, Cruz, Liebel and Gallagher shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(5)   Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order.  Discovery requests need not be filed with the court.

(6)   All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(7)   **The Pro Se Prisoner Litigation Office shall** send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

It is so ordered.

33

Signed this 15th day of March, 2018, at Hartford,

Connecticut.

```
                              /s/AWT
              _____
                      Alvin W. Thompson
                United States District Judge
```